IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BOB JAMBOIS,

            Plaintiff,

v.

ISMAEL OZANNE, COREY STEPHAN,
MATT MOESER and MARY ELLEN KARST,
each in his or her own individual capacity,

            Defendants.

OPINION AND ORDER

17-cv-156-wmc

---

In this lawsuit, plaintiff Bob Jambois alleges that defendants Dane County District Attorney Ismael Ozanne and several of his assistants violated Jambois' rights to expressive conduct under the United States Constitution by driving him from his position as an assistant district attorney in retaliation for his unsuccessful electoral challenge to Ozanne. Before the court are the defendants' motions to dismiss count V of plaintiff's first amended complaint (dkt. #21) and for judgment on all counts on the basis of "absolute prosecutorial immunity" (dkt. #28). Despite the close interrelation of plaintiff's First Amendment claims and his cause of action for constructive discharge, this court finds that the standard for dismissal is not satisfied and will deny defendants' motion to dismiss count V. Defendants' motion for judgment on the pleadings will also be denied as Jambois has alleged facts sufficient to overcome the defense of absolute immunity at the pleading stage of this litigation.

ALLEGATIONS OF FACTS[1]

A.  The Parties

Plaintiff Bob Jambois is a Wisconsin attorney.  From 1989 to 2005, Jambois served as Kenosha County District Attorney.  Jambois secured a conviction in the murder trial of Mark Jensen as a "special prosecutor" in Kenosha County Circuit Court.  At the time of the events at issue in this case, Jensen was awaiting retrial in Kenosha County.  Jambois joined the Dane County District Attorney's office in May 2015 as an assistant district attorney.  Jambois alleges that he brought significant trial experience to the office, and he successfully prosecuted a number of cases during his tenure with that office.

Defendant Ismael Ozanne has been the Dane County District Attorney at all times relevant to this litigation, and was previously an assistant in that office as well.  Defendants Corey Stephan, Matt Moeser and Mary Ellen Karst were also each assistant district attorneys in that office during the relevant period.

B.  2016 Dane County District Attorney Election

In May of 2016, Jambois secured enough signatures to challenge Ozanne in the Democratic primary election for the position of Dane County District Attorney.  Among other things, Jambois alleges that his candidacy was motivated by increasing discontent with Ozanne's leadership, and he made critical statements about Ozanne and the District Attorney's Office during the campaign.  On August 9, 2016, Ozanne nevertheless defeated Jambois in the primary election, and he was eventually reelected.

---

[1] The following facts are taken from plaintiff's complaint and plaintiff's allegations will be accepted as true for purposes of resolving the pending motions.

### C. Alleged Retaliatory Conduct and Constructive Discharge

Shortly after his victory, District Attorney Ozanne allegedly directed the other defendants to begin a campaign of retaliation and harassment against then Assistant District Attorney Jambois. On August 6, 2016, defendant Stephan met with Jambois, ostensibly to discuss Jambois' trial schedule, but quickly volunteered that he would accept Jambois' resignation. While Jambois was surprised by this, he did not resign.

After the meeting, Stephan handed Jambois a "notice of investigatory review," written on Ozanne's letterhead and signed by Stephan. The notice identified three areas of concern: (1) Jambois' procedure for drafting complaint, (2) Jambois' witness scheduling practices, and (3) Jambois' continued involvement with the Kenosha County District Attorney's office in the retrial of Mark Jensen. After receipt of this notice, Jambois met with Stephan and Moeser for an investigatory interview on August 29, 2016. According to the complaint in this lawsuit, Jambois demonstrated during this interview that each of these three concerns lacked foundation.

On September 8, 2016, Jambois received a "Letter of Expectation," which was also written on Ozanne's letterhead and outlined nearly identical concerns as the notice of investigatory review. The letter also allegedly imposed constraints upon Jambois required of no one else in the District Attorney's Office. Specifically, the letter barred Jambois from using paralegals to draft certain documents and imposed special requirements on the scheduling of witnesses. Jambois maintains that none of these procedures outlined were required of other assistant district attorneys. The Letter of Expectation further required Jambois to withdraw from the Mark Jensen murder trial, which he allegedly did.

3

Jambois next alleges the "management team" of the Dane County District Attorney's Office began efforts to guarantee Jambois would be unable to comply with the procedures required by the Letter of Expectation. (Am. Compl. (dkt. #19) ¶ 41.) For example, Jambois alleges that defendant Karst, acting for Ozanne, ensured that a young assistant district attorney's twenty most difficult cases were reassigned to Jambois. After the transfer of the cases, Jambois was required to act as counsel in thirty-one jury trials in a span of less than two months. To compound matters, the scheduled trials were complicated and time-intensive.

This caseload, Jambois alleges, was "without parallel" during Ozanne's management of the Dane County District Attorney's Office. (Am. Compl. (dkt. #19) ¶ 49.) Given the combination of the caseload and procedures imposed on him alone, Jambois alleges his work suffered, and he was forced to retire in September 2016 after determining that he could no longer effectively represent Dane County.

OPINION

Plaintiff Jambois brings this suit against each defendant in their individual capacities for violation of his First Amendment and Fourteenth Amendment rights under 42 U.S.C. § 1983. Jambois also asserts separate claims against defendants collectively for "constructive discharge" and punitive damages. Before the court are two motions filed by the defendants. The first is to dismiss the cause of action for "constructive discharge" on the theory that it is encompassed by his First Amendment claims. (Dkt. #21.) The second is a motion for judgment on the pleadings, arguing that the alleged misconduct, even if proven, is protected by the doctrine of absolute prosecutorial immunity. (Dkt. #28.) The

4

court addresses each motion in turn below.

## I. Defendant's Motion to Dismiss Count V

Plaintiff's first amended complaint includes a separate, fifth cause of action against all defendants titled "Violation of First Amendment Rights – Constructive Discharge." (Am. Compl. (dkt. #19) 9.) Defendants have moved to dismiss Count V on the theory that "constructive discharge" is encompassed by plaintiff's broader First Amendment claims (Counts I-IV) for Retaliation by an employer. (Dkt. #22.) Even if this were so, defendants' motion would appear pointless. Regardless, because federal law recognizes "constructive discharge" as a distinct claim for which relief may be granted, this motion will be denied.

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because Jambois' claim for constructive discharge is grounded in the First Amendment, federal law controls, rather than Wisconsin state standard for constructive discharge. *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007). "Federal law does recognize a claim for constructive discharge under the due process clause," although its requirements are exacting. *Brown v. State of Wis.*, No. 16-CV-346-BBC, 2017 WL 371915, at *4 (W.D. Wis. Jan. 25, 2017).

There are two, basic avenues by which a plaintiff may prove constructive discharge. *Cockroft v. Moore*, 638 F. Supp. 2d 1024, 1035 (W.D. Wis. 2009). The first is to prove plaintiff's working conditions became "unbearable," which is "a *more* demanding standard

than the showing that a plaintiff must make to prevail on a claim of retaliation for his exercise of his free speech rights." *Id*. (emphasis added). The second is to prove that "an objective employee in [the plaintiff's] position would have known from [his employer's] actions that his job and career [at the employer] were over." *Id*. at 1036.

A claim for constructive discharge based on intolerable working conditions requires another right be violated because "there is nothing inherently unlawful about intolerable working conditions," however ill-advised it may be. *Verfuerth v. Orion Energy Sys., Inc.*, No. 14-C-352, 2016 WL 4507317, at *14 (E.D. Wis. Aug. 25, 2016). "Instead, constructive discharge only arises when some *other* independent right is implicated, such as the right not to be discriminated against unlawfully." *Id*. (citing *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016)). In the present case, Jambois argues that the alleged violation of his First Amendment rights provides this necessary predicate right.

For Jambois to prevail on his claims for First Amendment retaliation, he must prove: (1) he was engaged in a constitutionally protected activity; (2) he suffered a deprivation that would likely deter a person from engaging in the protected activity in the future; and (3) the protected activity was a motivating factor in defendant's decision to take retaliatory action. *Nesvold v. Roland*, 37 F. Supp. 3d 1027, 1036 (W.D. Wis. 2014) (citing *Bridges v, Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). To prevail on a retaliation claim, however, the deprivation in question may be "something less than a tangible detriment, such as an outright discharge or even a *constructive discharge*." *Chrzanowski v. Bianchi*, 122 F. Supp. 3d 755, 764-65 (N.D. Ill. 2015) (citations and internal quotation marks omitted) (emphasis added); *see also Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("A constructive discharge constitutes an adverse employment action."). In this way,

6

defendants argue, the cause of action for constructive discharge is subsumed by plaintiff's First Amendment retaliation claims -- or said another way, Jambois seeks to prove a deprivation deterring future protected activity . . . by alleging he was harassed and constructively discharged." (Defs.' Reply Br. (dkt. #24) 1.)

There is certainly a close relationship between these claims. Indeed, one is a necessary predicate for the other. However, defendants' argument ignores the distinct nature of a claim for constructive discharge under federal law. Even if the fact of a constructive discharge constitutes the most significant proof of deprivation under plaintiff's First Amendment retaliation claims, Jambois has plead facts sufficient to support a constructive discharge claim as well. While it is unclear at this juncture what additional damages, if any, would flow from plaintiff's constructive discharge claim if the First Amendment retaliation claims are proven, such concerns may be addressed by motion practice or cured by jury instructions before any determination of actual damages. In fact, defendants do not argue that *any* harm or additional burden would result from allowing plaintiff to proceed with a separate count for constructive discharge. To the contrary, they argue it is an important fact under both parties' theory of the case, making defendants' motion to dismiss both pointless and meritless at this stage of the litigation. Consequently, the motion to dismiss will be denied.

## II. Defendant's Motion for Judgment on the Pleadings

Defendants also move for judgment on the pleadings as to all claims,[2] arguing that

---

[2] A party may move for judgment on the pleadings after the filing of a complaint and answer pursuant to Rule 12(c). *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a Rule 12(b)(c) motion to dismiss. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th

7

even if Jambois is able to prove the retaliatory conduct he alleges, the doctrine of absolute prosecutorial immunity bars recovery since the alleged retaliatory conduct involved only the management of Jambois' responsibilities as a prosecutor. (Dkt. #28.) Whatever the applicability of this immunity doctrine in an employment setting, this court is unable to find on the pleadings alone that the alleged retaliatory conduct resulted solely from defendants' duties as prosecutors, rather than from their administrative functions as Jambois' superiors.

As an initial matter, defendants *are* shielded from suit by absolute immunity for actions and decisions undertaken in furtherance of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Instead, the scope of the immunity extends only to conduct "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009).

Even so, such conduct is not limited to conduct within judicial proceedings as "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler*, 424 U.S. at 431 n.33. As a result, courts employ a "functional approach" to determine whether the activity at issue is within the scope of prosecutorial duties and, therefore, subject to absolute immunity. *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011).

Notably, the Supreme Court has held that certain administrative functions may be subject to absolute immunity, particularly when they are directly connected to the conduct

---

Cir. 2016) (citing *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991)).

of trial, or require legal knowledge and the exercise of related discretion. *Van De Kamp*, 555 U.S. at 344. Moreover, the presumption is that even qualified (as opposed to) absolute immunity is sufficient to protect government officials in the course of their duties. *Burns*, 500 U.S. at 486-87.

At the same time, prosecutorial immunity does not immunize a district attorney for his or her actions as an "administrator rather than as an officer of the court." *Imbler*, 424 U.S. at 431 n.33 (1976). For example, the Seventh Circuit has held that a decision to *terminate* an employee is administrative conduct that is not protected by absolute prosecutorial immunity. *See Swetlik v. Crawford*, 738 F.3d 818, 824 (7th Cir. 2013) ("Absolute immunity is not available here because the defendants' action was an employment decision, not a decision to bring criminal charges. Defendants have not provided and we have not found any cases extending prosecutorial immunity to an employment decision."). The *Swetlik* court drew an analogy to absolute judicial immunity, where hiring and firing decisions are considered unprotected administrative conduct. *Id*. at 825 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988) (state judge "was acting in an administrative capacity when he demoted and discharged" a probation officer and therefore was not entitled to absolute immunity)).

Not surprisingly, plaintiff Jambois argues that his allegations of retaliation and constructive discharge involve just such employment discipline and termination functions, and thus fall under the rubric of an administrative action not protected by the immunity doctrine. In addressing whether prosecutorial immunity should apply to the decision of an official to appoint a special prosecutor, the Ninth Circuit drew the line as follows:

> Decisions related to general conditions of employment—
> including decisions to hire, promote, transfer, and terminate—

> and which do not affect the prosecutor's role in any particular matter are generally not sufficiently related to the initiation and conduct of a prosecution in a court of law or their role as an advocate of the state to qualify for absolute immunity. Decisions related to appointments and removals in a particular matter will generally fall within the exercise of the judge's or prosecutor's judicial and quasi-judicial roles and are shielded from suit by absolute immunity.

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 930–31 (9th Cir. 2012).

This line drawing seems both well-founded and practical, although its application to this matter just restates the issue: whether the defendants' alleged retaliatory actions should be considered administrative or prosecutorial. While a constructive discharge may be the intuitive equivalent of an administrative decision to terminate an employee, the analysis is complicated where, as here, defendants' alleged precipitating acts bearing on the tolerability of workplace conditions at least arguably fall under the rubric of prosecutorial functions. At one end of the spectrum is Jambois' claim that he was assigned a caseload so large as to be unprecedented, and therefore allegedly designed to cause him to fail in his role as a prosecutor and to drive him from the office. At the other end are the directives that Jambois not assign charging decisions to a paralegal and to better manage the time of witnesses at trial, assuming Jambois cannot show that these directives applied only to him. So, too, would likely be the directive that he play no further role in the prosecution of Mark Jensen in Kenosha County, since as the Ninth Circuit observed in *Lacey*, a decision to appoint or remove a prosecutor from a particular matter is generally within the prosecutorial role. 693 F.3d at 931.

The court will not prejudge these specific examples out of context, however, since the larger question of whether the *aggregate* result of defendants' arguably individually-protected actions is no longer entitled to the protection of absolute or even qualified

prosecutorial immunity must proceed past the pleading stage, particularly when a more sweeping application of the immunity doctrine might embolden some district attorneys to manipulate their caseloads to unduly burden disfavored employees for their exercise of constitutionally-protected rights, rather than directly firing them, to avoid liability for First Amendment retaliation. Indeed, allowing what are substantively decisions to terminate to be immune from challenge, could remove First Amendment protections for individuals, such as plaintiff, and therefore chill electoral and other expressive conduct.

Regardless, at least at this early pleadings stage, the court concludes that the allegations related to a general, highly disproportionate manipulation of Jambois' caseload may be viewed by a trier of fact as an employment action, rather than an action "intimately related to the judicial process" of a particular case. Obviously, this reasoning may extend also to the allegations of harassment suffered by Jambois during his disciplinary proceedings. While it is the "function performed" that determines whether an official's actions are protected by prosecutorial immunity, context should matter when, as here, there are allegations of a nearly-month long campaign of retaliation against Jambois. Moreover, the internal investigation and investigatory review that Jambois was subjected to could be viewed as a veiled threat to his employment when drawing all inferences in Jambois' favor, especially given that the first conversation focused on the willingness of the office to accept his resignation and the disciplinary procedures were imposed concurrent to the assignment of an allegedly unprecedented caseload.

Certainly responsibility for charging decisions and the treatment of witnesses touch upon the judicial process, and therefore prosecutorial discretion, but the fact that the office allegedly imposed special requirements in all *future* cases handled by Jambois points to the

11

possibility that more was intended than better management of his specific cases. While Jambois must eventually proffer evidence that he was subject to a pattern of retaliatory conduct that is sufficient to survive summary judgment on immunity grounds, especially with regard to the allegations related to his use of paralegals and witness scheduling practices, it would be premature to conclude that he cannot do so before any discovery has taken place. Accordingly, the motion for judgment on the pleadings will be denied as well.

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #21) is DENIED.

2) Defendants' motion for judgment on the pleadings (dkt. #28) is DENIED.

Entered this 24th day of January, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge